IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROBERT KOLLER,                          )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )   Case No. 15-cv-673-TLW
                                        )
NANCY A. BERRYHILL,[1]                  )
Acting Commissioner of Social Security, )
                                        )
                                        )
        Defendant.                      )

## OPINION AND ORDER

Plaintiff Robert Koller seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 10). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## ISSUES

Plaintiff argues (1) that the ALJ's residual functional capacity ("RFC") is not supported by substantial evidence because the record supports the inclusion of limitations to plaintiff's left arm; (2) that the ALJ erred in weighing the opinions of Dr. Ricardo Castellon and Dr. Derrise Garner; and (3) that the ALJ made improper credibility findings. (Dkt. 19).

---

[1] Effective January 23, 2017, Nancy A. Berryhill has replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration and should be substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

## STANDARD OF REVIEW

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## ANALYSIS

### Substantial Evidence – RFC Findings for Plaintiff's Left Arm

Plaintiff argues that the ALJ erred in failing to include limitations for his left arm, which is his dominant arm. (Dkt. 19). Plaintiff contends that the following evidence supports such limitations: a 2010 EMG study showing moderate nerve entrapment in the left wrist; the consultative examiner's finding that plaintiff had decreased arm and grip strength; the agency physician's opinion that plaintiff should use his left arm only occasionally; and plaintiff's testimony that he could not use his left arm for very long or lift more than ten pounds. Id. Plaintiff also argues that the ALJ was required to find limitations because he found that plaintiff has the severe impairment of left arm and shoulder pain. Id.

The Commissioner argues that the medical evidence shows a significant number of subjective complaints but little objective evidence to support physical limitations in the left arm. (Dkt. 23).

At step two, the ALJ found that plaintiff has the severe impairment of left shoulder and arm pain. (R. 17). The ALJ noted that an EMG identified nerve entrapment in the left wrist in April 2010. (R. 22). The ALJ also noted that plaintiff had a positive Tinel's sign in both wrists in April 2012, but "as a whole," plaintiff showed no signs of dysfunction. (R. 23). The ALJ noted plaintiff's complaint of left shoulder pain, and his physician's recommendation that he perform stretching and strengthening exercises for the rotator cuff. Id.

The ALJ discussed plaintiff's October 2012 consultative physical examination, which showed that plaintiff's left hand strength was 3/5. (R. 24). Plaintiff also complained of pain when he raised his left arm, but plaintiff had normal range of motion. Id. The consultative examining physician assessed plaintiff with left shoulder pain following a history of surgery and opined that it affected plaintiff's ability to lift with his left arm. Id. The ALJ noted that the treatment notes from the clinic show no "consistent dysfunction in strength or coordination of the upper extremities." (R. 28). The ALJ also found that plaintiff's activities were inconsistent with his complaints of left arm pain, citing a treatment note in which plaintiff complained of pain in his *left* ribs (emphasis in the ALJ decision) after using a crank to lift a boat. (R. 26). The ALJ also cited the medical findings that plaintiff could oppose his left finger and thumb without difficulty and could do beadwork. (R. 26, 28).

The ALJ concluded that plaintiff was not as limited in the use of his left arm as he complained. The ALJ found that plaintiff's left arm limited his ability to climb ladders, ropes, and

scaffolds, but he was otherwise able to meet the requirements of light work with respect to his left arm. (R. 28-29).

Contrary to plaintiff's claims, the ALJ included left arm limitations. Therefore, there is no merit to plaintiff's argument that the ALJ failed to find limitations resulting from a severe impairment.

Plaintiff also misstates the ALJ's analysis of the medical evidence as it relates to plaintiff's left arm. The ALJ discussed the EMG study, the positive Tinel's sign, and the consultative examiner's findings of decreased grip and strength in the left arm. However, the ALJ found that, overall, plaintiff's functional ability does not require any limitations on the use of the left arm other than those in the RFC (climbing ladders, ropes, and scaffolds). Further, although the opinion from the consultative examining physician indicates that plaintiff has pain when raising his left arm above his shoulder and cannot grasp with his right hand, plaintiff does not challenge the ALJ's decision to give little weight to this opinion, and the consultative examiner's findings do not, on their face, prevent plaintiff from performing light work.

Additionally, the ALJ's approach is consistent with the regulations governing RFC findings. It is not the diagnosis that dictates the RFC. Instead, the ALJ is required to assess the "functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p; see also Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995) (the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment) and Jimison ex rel. Sims v. Colvin, 513 F. App'x 789, 793 (10th Cir. 2013) (unpublished).[2] The ALJ's analysis focuses on the functional limitations imposed

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

by various conditions that impact plaintiff's arm. Where that evidence conflicts, as with the consultative examiner's opinion, the ALJ gave reasons for rejecting that opinion and cited to other evidence in the record that suggests plaintiff is capable of doing more than his subjective complaints indicate. The ALJ's decision ultimately finds that plaintiff's overall ability to use his left arm is only limited to the extent that it prevents him from climbing ladders, ropes, and scaffolds. This decision is supported by substantial evidence in the record. Plaintiff's argument, then, is simply an attempt to have the Court reweigh the evidence. This the Court cannot do, even if the Court would have reached a different decision with respect to the use of plaintiff's left arm. See Hackett, 395 F.3d at 1172; White, 287 F.3d at 908.

**Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Castellon regarding plaintiff's limitations and his qualifications for a handicap placard for his vehicle. (Dkt. 19). Plaintiff argues that Dr. Castellon was a treating physician and that the ALJ failed to articulate good reasons for rejecting the physician's opinion that plaintiff could not walk more than two hundred feet. Id. Plaintiff also challenges the ALJ's decision to give great weight to the opinion of the consultative examining psychologist, except for her limitation on contact with the general public. Id.

Although the ALJ states that Dr. Castellon only saw plaintiff on one occasion at the clinic where he regularly sought treatment, the ALJ's decision identifies Dr. Castellon as a treating physician. (R. 27). Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); see also Hackett v. Barnhart, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350

F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 F. App'x 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 416.927. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. See Anderson v. Astrue, 319 F. App'x 712, 717 (10th Cir. 2009) (unpublished).

Dr. Castellon completed an application for a temporary handicap placard on May 7, 2013, following a single examination. (R. 443-47, 451). In that application, Dr. Castellon indicated that plaintiff had a diagnosis of back pain with radiculopathy and qualified for a placard due to the inability to walk more than two hundred feet without stopping to rest. (R. 451). The ALJ rejected this finding because it was inconsistent with two other treatment notes. First, the ALJ cited X-rays taken in February 2013, which showed only mild degenerative changes. (R. 28). Second, the ALJ cited a treatment note from May 20, 2013, just two weeks after Dr. Castellon examined plaintiff, in which the physician noted that plaintiff's low back pain was inflammatory and showed no symptoms of radiculopathy. Id. Additionally, the ALJ noted that, at the time of Dr. Castellon's examination, plaintiff's symptoms did not include "saddle anesthesia or numbness," with the implication being that such symptoms would be present if plaintiff did have a true diagnosis of radiculopathy. Id. It was also important to the ALJ that plaintiff had not taken the medication previously prescribed to him for back pain, with the implication being that plaintiff's symptoms likely worsened due to noncompliance with treatment. Id. Finally, the ALJ stated that Dr. Castellon's limitation of walking two hundred feet is close to, but not consistent with, plaintiff's own statement that he could walk three hundred feet. Id. Based on this evidence, the ALJ gave little weight to Dr. Castellon's opinion.

The Court finds that the ALJ was not justified in relying on the discrepancy between plaintiff's own statement about the distance he could walk and Dr. Castellon's finding. Dr. Castellon's finding is based on a pre-printed placard application with check boxes; therefore, the minor discrepancy is not an adequate reason for giving little weight to Dr. Castellon's opinion. The ALJ's remaining reasons for giving little weight to Dr. Castellon's opinion, however, are supported by substantial evidence. The ALJ cited two additional treatment records, both dated close in time to Dr. Castellon's examination and placard application, which contradict the conclusion that plaintiff could not walk more than two hundred feet. One of those records was an objective medical test – an x-ray – which showed only mild degenerative changes in the spine, and the other record was an opinion from another physician at the clinic, with standing equal to Dr. Castellon's.

Overall, the ALJ gave sufficient reasons and cited to sufficient evidence in support of his decision to give little weight to Dr. Castellon's opinion, and his analysis is consistent with the law regarding the analysis of treating physician's opinions.

With respect to the consultative examining psychologist's findings, the ALJ gave great weight to her opinion, with one exception. Dr. Garner opined that plaintiff should have only limited contact with the public. (R. 29, 333-39). The ALJ reviewed plaintiff's testimony regarding his activities of daily living and concluded that plaintiff could interact with the public without limitation. (R. 29). The ALJ cited plaintiff's ability to go shopping, attend church, and travel to the beach with family. (R. 30). The ALJ also concluded, in his paragraph B findings, that plaintiff's social anxiety was due in part to his concern that people would find out that he is a registered sex offender. (R. 19). The ALJ noted in his discussion of plaintiff's conviction that plaintiff also attends mandatory counseling because of his placement on the registry. Id.

An ALJ who chooses to reject a portion of a consultative examiner's opinion should "provide specific, legitimate reasons for rejecting it." Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003). The consistency of the opinion with the entire record is a proper factor for consideration. See 20 C.F.R. § 416.927(d). Plaintiff told Dr. Garner that he has friends and interacts with others at church and attends his mandatory counseling sessions. (R. 333-39). Plaintiff also reported that he was able to interact with others, shop, attend church, and spend time with family, but he did not want to be around his neighbors. (R. 217-18). The ALJ gave specific reasons for rejecting this portion of Dr. Garner's opinion, and those reasons are supported by the record. Again, plaintiff is asking the Court to re-weigh the evidence.

Alternatively, even if the ALJ's reasons for rejecting Dr. Garner's limitation regarding contact with the public are insufficient, the ALJ's step five findings are consistent with Dr. Garner's limitation. The ALJ found that plaintiff could perform the jobs of marking clerk (DOT # 209.587-034) or housekeeper (DOT # 323.687-014). (R. 29-30). According to Appendix B of the Dictionary of Occupational Titles ("DOT"), the fifth number of the nine-digit code reflects the job's relationship to people. See http://www.occupationalinfo.org/appendxb—1.html (last visited on March 30. 2017). The DOT rates the amount of interaction on a scale of 0–8, although the scale does not necessarily appear to be in ascending order from most interaction to least. For example, 0 is "Mentoring," and 5 is "Persuading," both of which could involve constant interaction with others. 8, however, is defined as "Taking Instructions–Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." Id. This definition demonstrates that the work requires only limited contact with people. Moreover, the job descriptions for marking clerk and housekeeper do not require more than limited interaction with

9

the general public. See http://www.occupationalinfo.org/20/209587034.html (last visited March 30, 2017) (defining the job description for a marking clerk); http://www.occupationalinfo.org/32/323687014.html (last visited March 30, 2017) (defining the job description for a housekeeper). Accordingly, any error in the ALJ's decision to reject Dr. Garner's limitation is harmless because the ALJ's step five findings do not include jobs that would conflict with this limitation. See Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (defining harmless error); Liveoak v. Astrue, 2013 WL 183710 (N.D.Okla. January 17, 2013) (applying harmless error analysis to a discrepancy between the ALJ's RFC and his step five findings).

**Credibility**

Plaintiff argues that the ALJ ignored medical evidence to find plaintiff not credible, particularly with respect to the alleged limitations on plaintiff's left arm and his ability to interact with others, and gave improper weight to plaintiff's activities of daily living. (Dkt. 19).

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of

nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ cited several reasons for finding plaintiff not credible. The ALJ cited several instances in which plaintiff gave conflicting statements regarding the use of his arm. (R. 25-26). The ALJ also noted that plaintiff stated that he injured his arm in 2008, but he did not file for benefits until 2012, indicating that his injuries were not as severe as he alleged. (R. 26). Plaintiff also engaged in activities that were inconsistent with his claim that he could not use his left arm. Id. The ALJ found that plaintiff's activities of daily living were inconsistent with his allegations of social anxiety and were based in his fear that people would learn he was a registered sex offender. (R. 19. 26). The ALJ cited to the objective medical evidence, which would indicate mild symptoms and not the severe symptoms plaintiff alleged. (R. 26-27). Finally, the ALJ cited plaintiff's sporadic work history as a factor that weighed against his credibility. (R. 27).

All the reasons cited by the ALJ are appropriate credibility factors and are supported by the evidence in the record. While plaintiff argues that the ALJ ignored medical evidence, plaintiff's argument amounts to a request that the Court re-weigh the evidence. Again, the Court cannot do so.

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 31st day of March, 2017.

_____
T. Lane Wilson
United States Magistrate Judge